UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
CONTINENTAL FINANCE COMPANY and :
JAMES MURPHY, :
  :
               Plaintiffs, :
  :
 - against - :
  :
ROBERT LEDWITH; ANDRES PUERTA; :
TERRY MOORE; LOCAL 46, METALLIC :
LATHERS AND REINFORCING :
IRONWORKERS; NEW YORK STATE :
BUILDING AND CONSTRUCTION TRADES :
COUNCIL; DISTRICT COUNCIL OF NEW :
YORK CITY AND VICINITY OF THE UNITED :
BROTHERHOOD OF CARPENTERS AND :
JOINERS OF AMERICA; and CONSTRUCTION :
AND GENERAL BUILDING LABORERS, :
LOCAL 79, :
  :
               Defendants. :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: June 22, 2009

No. 08 Civ. 7272 (PAC)

OPINION & ORDER

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiffs Continental Finance Corporation ("Continental") and James Murphy ("Murphy") bring this action against Defendants Robert A. Ledwith ("Ledwith"); Andres Puerta ("Puerta"); Terry Moore ("Moore"); Local 46, Metallic Lathers and Reinforcing Ironworkers ("Local 46"); New York State Building and Construction Trades Council ("State Building Trades Council"); District Council of New York City and Vicinity of the United Brotherhood of Carpenters and Joiners of America ("District Council of Carpenters"); and Construction and General Building Laborers, Local 79 ("Local 79"). Plaintiffs, developers of luxury apartments, contend that Defendants employed intimidation, threats, and violence in an attempt to coerce Plaintiffs into using union labor at a Manhattan building site. Plaintiffs' Amended Complaint

1

alleges violations of the Labor Management Relations Act, 29 U.S.C. § 187 et seq. ("LMRA"); violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. ("RICO"); and state claims for tortious interference with contract, defamation, and assault.

Defendants move to dismiss the Amended Complaint. Defendants' motion is GRANTED.

## BACKGROUND

I.   Facts[1]

In August 2007, Continental, a real estate development corporation, began work on a luxury apartment building located at the corner of 49th Street and Second Avenue in Manhattan (the "Site"). Murphy, a Continental employee, oversaw operations at the Site. Continental selected Ocean Avenue Construction ("Ocean Avenue") as construction manager and Pav-Lak Industries ("Pav-Lak") as general contractor for the Site. Pav-Lak, in turn, chose Rovini Construction ("Rovini") to build the superstructure at the Site.

According to Plaintiffs, beginning in October 2007, Defendants began threatening Continental in an effort to force it to either make Rovini sign a union contract or replace Rovini with a union contractor. In February 2008, Plaintiffs allege that Defendants began physically assaulting Continental employees; blocking deliveries at the Site; picketing the Site; intimidating contractors, real estate agents, and potential condominium buyers; holding rallies at the Site; and vandalizing the Site. On August 8, 2008, Defendant Moore allegedly pushed Plaintiff Murphy to the ground and repeatedly threatened to "kill him" and take a knife and "cut [his] balls off" because Continental refused to accede to Defendants' demands.

Plaintiffs also contend that Defendants distributed flyers and leaflets that contained disparaging comments about Continental and the Site, for example that the apartments on the

---

[1] The facts in this section are taken from Plaintiffs' Amended Complaint.

Site were "overpriced" and were being built "in a shoddy fashion"; that Continental was employing "mostly desperate and poor undocumented workers that are being exploited for profit"; and that Continental was violating federal and state tax laws by failing to pay payroll taxes on behalf of employees who worked at the Site.

## II.     Plaintiffs' Amended Complaint

Plaintiffs' Amended Complaint advances eight claims.  The first claim alleges that Defendants Local 46, Local 79, State Building Trades Council, and District Council of Carpenters violated Section 303 of the LMRA by engaging in a "secondary boycott" of Continental.

Plaintiffs' second, third, fourth, and fifth claims allege RICO violations.  The second claim alleges that Defendants violated 18 U.S.C. § 1962(b) by acquiring an interest in or control over Continental through a pattern of racketeering activity.  The fourth claim alleges that Defendants violated 18 U.S.C. § 1962(c) by establishing an "association in fact" that managed and operated Continental by means of racketeering activity.  Claims three and five allege that Defendants violated 18 U.S.C. § 1962(d) by conspiring to violate sections 1962(b) and 1962(c), respectively.

Plaintiffs' remaining three claims arise under New York state law.  The sixth claim alleges that Defendants tortiously interfered with Continental's contracts by encouraging vendors and buyers to either terminate existing agreements with Continental or refrain from entering into new agreements.  The seventh claim alleges that Defendants distributed flyers and leaflets defaming Continental.  The eighth claim alleges that Defendant Moore, acting on behalf of the other Defendants, assaulted Plaintiff Murphy by pushing him to the ground the threatening him.

3

**DISCUSSION**

**III.    Standard of Review for a Motion to Dismiss**

When considering a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6), the court "is to accept as true all facts alleged in the complaint" and "draw all reasonable inferences in favor of the plaintiff." Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007). But "threadbare recitals of a cause of action's elements, supported by mere conclusory statements…are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1940 (2009). To avoid dismissal, the complaint must contain "enough facts to state a claim to relief that is plausible on its face," i.e. facts that "nudge[] [the plaintiff's] claims across the line from conceivable to plausible." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

**IV.    LMRA § 303**

Plaintiffs' first claim arises under Section 303 of the LMRA, which provides a cause of action for parties injured by a labor organization that commits unfair labor practices in violation of 29 U.S.C. § 158(b)(4). 29 U.S.C. § 187. Section 158(b)(4), in turn:

> proscribes secondary picketing and boycotting….When the union targets its behavior towards a direct employer with whom it has a dispute, this is considered "primary activity." But a union may also direct activity against a "secondary" or "neutral employer" with whom it does not have a dispute. By placing enough pressure, a union might coerce a secondary employer to change its own business relationship with a primary employer, in such a way that is detrimental to the primary employer. The union thereby succeeds in placing pressure on a primary employer indirectly, until that employer capitulates to the union's demands.

C&D Restoration, Inc. v. Laborers Local 79, No. 02 Civ. 9448 (CSH), 2004 WL 736915, at *3 (S.D.N.Y. Apr. 5, 2004). "Implicit in the idea of a secondary dispute is the fact that there is a

4

labor dispute between a labor organization and an employer, and that the boycott charged is directed against another employer who is neutral to the dispute." Kon-Tempo Furniture v. Kessler, 145 F. Supp. 341, 345 (E.D.N.Y. 1956).

The Amended Complaint makes bare-bones claims that Defendants' principal dispute was with Rovini, the non-union subcontractor, and that Continental was a neutral party to that dispute. (See Am. Compl. ¶¶ 21-23, 25.) Plaintiffs' factual allegations, however, do not support these claims. At no point, for example, do Plaintiffs claim that Defendants communicated to them or anyone else that Continental was targeted because of Rovini's labor practices. See Nat'l Labor Relations Bd. v. Int'l Union of Operating Eng'rs, 317 F.2d 638, 641-62 (8th Cir. 1963) (finding evidence of a secondary boycott where union representatives approached neutral secondary employers and threatened to disrupt their projects because of the primary employer's labor practices). Instead, Plaintiffs allege that Defendants' goal was to drive Continental out of business, that they "demanded that Continental utilize one of the contractors that it has a collective bargaining agreement with to perform work at the Site," and that they engaged in a host of activities aimed at Continental on Continental's Site. (See id. ¶¶ 24, 26-28.) In other words, despite their legal claim of secondary boycott activity, Plaintiffs' factual allegations against Defendants more accurately describe a primary boycott aimed at Continental.

Moreover, even if Defendants' primary dispute was with Rovini, Plaintiffs fail to demonstrate that any harm they may have suffered due to this dispute is attributable to an unlawful secondary boycott. For example, Plaintiffs do not allege that Continental was picketed or otherwise harmed at locations other than the Site at which Rovini also worked. See Riverside Coal Co. v. United Mine Workers of Am., 410 F.2d 267, 272-73 (6th Cir. 1969) (finding a secondary boycott based upon "a clear pattern of threatening and violent conduct [aimed at

5

neutral parties], not only at the site of the picketing but also at various locations away from the primary site").  While it is doubtful that Continental is a neutral in the dispute, unions do not engage in unlawful secondary boycott activity where their actions against the primary employer happen to have an adverse effect on neutral parties because the neutral parties are also working at the primary jobsite.  See 666 Cosmetics, Inc. v. Davis, 347 F. Supp. 389, 391-92 (S.D.N.Y. 1972) (holding that the "mere fact that some neutral employees may incidentally be affected by defendants' picketing at the site of the primary employer's business is not sufficient to bring this activity within the scope of [29 U.S.C. § 158(b)(4)]"); J. Landowne Co., Inc. v. Paper Box Makers and Paper Specialties Union, Local 299, 278 F. Supp. 339, 340-41 (E.D.N.Y. 1967) (recognizing that picketing is inevitably "aimed at all those approaching the situs [and] contributing to the operations which the strike is endeavoring to halt," and holding that "[u]nion acts against an employer in a primary dispute are not transformed into activities with an unlawful secondary objective however severe the impact on neutral employers").  In the present matter, assuming that Defendants' dispute was with Rovini, it was appropriate for Defendants to picket the Site at which Rovini was working, and it was not secondary boycott activity if that picketing also affected Continental.

Thus, Plaintiffs' secondary boycott claim against Local 46,[2] Local 79, State Building

---

[2] The Amended Complaint alleges that Continental brought a secondary boycott claim against Local 46 before the National Labor Relations Board ("NLRB"), that the NLRB "concluded that Local 46 had, in fact, engaged in unlawful secondary boycott activity," and that Local 46 therefore agreed to settle the charges against it.  (Am. Compl. ¶¶ 38-43.)  At oral argument, counsel for Local 46 denied this characterization.  (See Transcript of Oral Argument on June 4, 2009 ("OA Tr.") at 8:22-10:2.)  In a letter dated August 22, 2008, supplied to the Court by Defendants, the NLRB dismissed Continental's claim against Local 46, stating that "it cannot be concluded that Local 46 has engaged in unlawful secondary activity."  Letter re: Local 46, Metallic Latherers Union (Continental Finance Corp.) Case Nos. 2-CC-2735, and 2-CP-1098, Aug. 22, 2008.  Indeed, the NLRB concluded that "Local 46 is otherwise engaged in lawful primary activity at the job site…."  Id.  Although the NLRB's dismissal is not dispositive of the issue before this Court, it does lend considerable support to the Court's determination that Plaintiffs have failed to allege a claim of a secondary boycott.

Trades Council,[3] and District Council of Carpenters is insufficiently pled and is dismissed.

**V.    RICO**

Plaintiffs next allege RICO violations pursuant to 18 U.S.C. §§ 1962(b), 1962(c), and 1962(d).

    **A.    Section 1962(b)**

Section 1962(b) provides that "[i]t shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."  18 U.S.C. § 1962(b).  To state a claim under 1962(b), the plaintiff must allege that: (1) the defendants engaged in a pattern of racketeering activity for the purpose of acquiring an interest in or maintaining control of the enterprise; (2) the defendants in fact acquired an interest in or maintained control of the enterprise through a pattern of racketeering activity; and (3) the plaintiff suffered an injury as a result of the acquisition or control, separate and apart from any injuries attributable to the individual predicate acts of racketeering.  DeFazio v. Wallis, 500 F. Supp. 2d 197, 208-09 (E.D.N.Y. 2007).

Plaintiffs' Amended Complaint provides a laundry list of predicate acts in which Defendants allegedly engaged.  (See Am. Compl. ¶ 28.)  It also alleges that Defendants' actions constituted "multiple, repeated, and continuous violations of 18 U.S.C. § 1951 and New York

---

[3] At this point in the Opinion & Order it is worth noting the issue of whether the State Building Trades Council is an appropriate party to this action.  The Amended Complaint characterizes the State Building Trades Council as a "labor organization" located at 71 West 23rd Street in Manhattan.  (Am. Compl. ¶ 9.)  In their memorandum in support of their motion to dismiss, Defendants argue that the State Building Trades Council is not a labor organization.  (Def. Mem. in Support of Motion to Dismiss ("Def. Mem.") at 5-6.)  Furthermore, at oral argument, counsel for the State Building Trades Council explained that her client is a "legislative and educational organization" located in Albany and that the West 23rd Street address appearing in the Amended Complaint is actually the location of an entirely different organization, the New York City Building and Construction Trades Council.  (See OA Tr. at 21:9-20, 45:10-46:2.)  When asked about this issue, counsel for Plaintiffs indicated that he "didn't realize" that there were separate Building Trades Councils, one for the City and the other for the State, that Plaintiffs' "belief was the one that was in the city was the one that was involved" in Defendants' alleged unlawful activity, and that it was "possible" that, in naming the State Building Trades Council, Plaintiffs had named the wrong defendant.  (Id. at 31:2-32:8.)

7

Penal Law § 155.05(2)(3) (extortion)." (Id. ¶ 62.) Yet it never explains how these actions allowed Defendants to acquire an interest in or control over Continental. Nor, for that matter, does it allege in what sense Defendants acquired any interest or control. Failure to link the commission of predicate acts to the acquisition of interest or control is fatal to a 1962(b) claim. See Tuscano v. Tuscano, 403 F. Supp. 2d 214, 229 (E.D.N.Y. 2005) (dismissing a 1962(b) claim in part because "the plaintiff's complaint fails to allege how commission of the underlying predicate mail and wire frauds allowed [defendants] to acquire or maintain an interest in Countrywide").

Moreover, Plaintiffs fail to allege that they suffered an injury "distinct from the injury based on the alleged predicate acts." Black Radio Network, Inc. v. NYNEX Corp., 44 F. Supp. 2d 565, 579 (S.D.N.Y. 1999). "Without a distinct 'acquisition injury,' [the plaintiff] cannot state a cause of action under subsection 1962(b)." Discon, Inc. v. NYNEX Corp., 93 F.3d 1055, 1063 (2d Cir. 1996), vacated on other grounds, 525 U.S. 128 (1998). The Amended Complaint alleges that, as the result of Defendants' violation of 1962(b), "Continental has been damaged and sustained injuries which include but are not limited to lost sales, increased construction costs, and additional expenses for security services." (Am. Compl. ¶ 58.) Such injuries, however, are merely "the financial injur[ies] caused by the alleged predicate acts." DeFazio, 500 F. Supp. 2d at 209. Standing alone, they cannot satisfy 1962(b)'s requirement that the plaintiff plead a distinct "acquisition injury." This claim is therefore dismissed.

**B.     Section 1962(c)**

Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a

8

pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). To state a claim under 1962(c), the plaintiff must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." DeFalco v. Bernas, 244 F.3d 286, 306 (2d Cir. 2001) (citations and internal quotation marks omitted).

A well-pled 1962(c) claim requires "the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161 (2001). Moreover, "[t]he RICO enterprise is not the pattern of racketeering activity; it is an entity separate and apart from the pattern of activity in which it engages." Wild Edibles, Inc. v. Indus. Workers of the World Local 460/640, No. 07 Civ. 9225 (LLS), 2008 WL 4548392, at *1 (S.D.N.Y. Oct. 9, 2008) (citation and internal quotation marks omitted). Where the alleged enterprise is a "group of individuals associated in fact although not a legal entity," 18 U.S.C. § 1961(4), the plaintiffs "must provide solid information regarding the hierarchy, organization, and activities of the alleged enterprise, from which [the court] could fairly conclude that its members functioned as a unit….Lack of proof of such an independently existing separate enterprise dooms a RICO claim." Wild Edibles, 2008 WL 4548392, at *1 (citations and internal quotation marks omitted). As the Second Circuit has explained, "the dual requirements of (1) distinctness and (2) the proof needed to demonstrate an association-in-fact, work in tandem to weed out claims dressed up as RICO violations but which are not in fact." City of New York v. Smokes-Spirits.Com, Inc., 541 F.3d 425, 447 (2d Cir. 2008).

Plaintiffs' 1962(c) claim fails to satisfy either the distinctiveness or proof of association-in-fact requirements. Plaintiffs allege that "Defendants collectively constitute an 'association in fact' enterprise." (Am. Compl. ¶ 72.) Their only support for this allegation appears to be their

9

claim that Defendants collectively engaged in certain predicate acts. (See id. ¶ 28.) Demonstration of the existence of a distinct RICO enterprise, however, "requires proof that the conspirators formed and organized a separate entity (whether formal or informal) on whose behalf they acted; it is not enough if they merely acted together to commit the wrong." Wild Edibles, 2008 WL 4548392, at *1 (quoting Smokes-Spirits.Com, 541 F.3d at 451). Moreover, with respect to the proof required to demonstrate the existence of Defendants' alleged association-in-fact, Plaintiffs fail to provide any "solid information regarding [Defendants'] hierarchy, organization, and activities." See Wild Edibles, 2008 WL 4548392, at *1. For these reasons, Plaintiffs fail to state a claim under 1962(c).

### C. Section 1962(d)

Under Section 1962(d), "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). "Any claim under § 1962(d) based on conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims themselves are deficient." Discon, 93 F.3d at 1064 (citation and internal quotation marks omitted). As explained above, Plaintiffs have failed to state a claim under either 1962(b) or 1962(c). Consequently, Plaintiffs' two conspiracy claims made pursuant to 1962(d) are dismissed.[4]

## VI. State Law Claims

Finally, Plaintiffs advance state law claims for tortious interference with contract, defamation, and assault.

---

[4] Even if one or both of Plaintiffs' substantive RICO claims were to survive the motion to dismiss, their 1962(d) claims would still fail. "To state a claim under § 1962(d) plaintiffs must allege facts that support a conclusion that defendants consciously agreed to commit predicate acts….Conclusory allegations of a conspiracy are insufficient." Black Radio Network, 44 F. Supp. 2d at 581 (citations omitted). The Amended Complaint presents bald accusations of conspiracy without any factual support. (See Am Compl. ¶¶ 67, 79.) It is not enough merely to allege, as Plaintiffs do, that Defendants collectively engaged in certain actions. (See id. ¶ 28.)

10

"[D]istrict courts may decline to exercise supplemental jurisdiction over a claim…if the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).  Consequently, "where the federal claims are dismissed before trial, the state claims should be dismissed as well." Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998). For the reasons discussed above, Plaintiffs' LMRA and RICO claims are dismissed for failure to state a claim. The Court therefore declines to exercise supplemental jurisdiction over Plaintiffs' state law claims, and these claims are also dismissed.

Even if the Court were inclined to exercise supplemental jurisdiction over Plaintiffs' state law claims, their tortious interference with contract and defamation claims would still be dismissed for failure to state a claim.[5] First, the tortious interference claim is preempted by federal labor law. "When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by [federal labor law]…due regard for the federal enactment requires that state jurisdiction must yield." San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 244 (1959). Plaintiffs' tortious interference claim relies upon the same set of factual allegations as their LMRA secondary boycott claim. As such, it is preempted and must be dismissed.

In any event, Plaintiffs' allegation of tortious interference with contract is insufficient under New York law, which requires: "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third-party's breach of the contract without justification; (4) actual breach of

---

[5] By contrast, Plaintiffs' assault claim is well-pled against Defendant Moore.  To state a claim for assault under New York law, the plaintiff must allege "an intentional placing of another person in fear of imminent harmful or offensive contact."  See Girden v. Sandals Int'l, 262 F.3d 195, 203 (2d Cir. 2001) (citation and internal quotation marks omitted).  Plaintiffs allege that Moore, acting on behalf of the other Defendants, pushed Plaintiff Murphy to the ground and threatened to "kill him" and "cut [his] balls off."  (Am. Compl. ¶¶ 29, 91.)  If the Court had a basis for exercising supplemental jurisdiction over Plaintiffs' assault claim, these allegations would be sufficient to survive the motion to dismiss.

11

the contract; and (5) damages resulting therefrom." Kirch v. Liberty Media Corp., 449 F.3d 388, 401-02 (2d Cir. 2006) (citation and internal quotation marks omitted). Plaintiffs' Amended Complaint merely alleges that "Defendants have interfered with Continental's contracts by requesting and encouraging vendors and buyers to discontinue their contracts with Continental and not to enter into contracts with Continental." (Am. Compl. ¶ 82.) It fails to plead the existence of a specific contract, Defendants' knowledge of such contract, Defendants' procurement of a third-party breach or, most critically, the actual breach of the contract by a third party. Indeed, when asked by the Court at oral argument to identify which specific contract was breached as the result of Defendants' actions, Plaintiffs' counsel admitted that he did not "specifically know which one." (See Transcript of Oral Argument, June 4, 2009 ("OA Tr.") at 42:3-11.)

Plaintiffs' defamation claim is similarly deficient. "To state a claim for defamation under New York law, Plaintiff must establish: (1) that a defamatory statement of fact was made concerning [Plaintiff]; (2) that the defendant published that statement to a third party; (3) that the statement was false; (4) that there exists some degree of fault; (5) and that there are special damages or that the statement is defamatory per se, i.e. it disparaged the plaintiff in the way of his or her office, profession or trade." Ello v. Singh, 531 F. Supp. 2d 552, 575 (S.D.N.Y. 2007) (citation and internal quotation marks omitted). "While a complaint need not contain the exact words that constitute slander, the plaintiffs must allege facts that provide 'an adequate identification of the purported communication, and an indication of who made the communication, when it was made and to whom it was communicated.'" NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd., 262 F. Supp. 2d 134, 149 (S.D.N.Y. 2003) (citation omitted).

Plaintiffs' Amended Complaint contains what appear to be quotes from the allegedly

12

defamatory materials (see Am. Compl. ¶¶ 49, 51), but fails to allege any specific facts regarding who made these statements, when they were made, or to whom they were communicated. Plaintiffs' bald allegation that "Defendants" published and distributed the statements to "the general public" is insufficient to state a claim for defamation. (See id. ¶ 48.)

Furthermore, "statements of pure opinion are afforded protection from suit." Joyce v. Thompson Wigdor & Gilly, LLP, No. 06 Civ. 15315, 2008 WL 2329227, at *5 (S.D.N.Y. June 3, 2008) (citations and internal quotation marks omitted). The statements about which Plaintiffs complain cannot be construed as anything other than opinions—they criticize the quality of the workmanship at the Site and suggest that the apartments were not worth the price at which they were being sold. (See Am. Compl. ¶¶ 49, 51.)

Finally, with respect to Defendants Local 46, Ledwith, and Moore, Plaintiffs' defamation claim is barred by res judicata.[6] On April 3, 2009, Judge Richard F. Braun of New York Supreme Court, New York County, dismissed a defamation claim brought by Continental against Ledwith, Moore, and other individual officers and agents of Local 46. Continental Finance Corp. v. Coffey et al., Index No. 103646/2008. At oral argument, Plaintiffs' counsel claimed that their present defamation claim is different from the one Judge Braun dismissed. (OA Tr. at 39:17-23.) Yet even a cursory examination of Continental's state court amended complaint and attached exhibits demonstrates that the language Continental complained of in that matter is the same language complained of here. (Compare Amended Complaint, Index No. 103646/08 ("State Am. Compl.") ¶ 10 (alleging that the defendants in the state court action defamed Continental by distributing flyers stating that the apartments on the Site were "overpriced" and

---

[6] Under the well-established doctrine of res judicata, a subsequent action is barred where: (1) the prior action concluded with a final adjudication on the merits; (2) the prior claims and the current claims involve the same parties or those in privity with them; and (3) the claims asserted in the present action were, or could have been, asserted in the prior action because they arise from a common nucleus of operative fact. Monahan v. New York City Dep't of Corr., 214 F.3d 275, 285 (2d Cir. 2000).

13

"being built in a shoddy, sloppy fashion" by "mostly desperate and poor undocumented workers"), with Am. Compl. ¶¶ 49, 51 (alleging same against the present Defendants)).[7] Having lost their defamation action in state court, Plaintiffs cannot bring the same action against Local 46, Ledwith, and Moore here.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiffs' Amended Complaint is GRANTED. Plaintiffs' tortious interference with contract claim against all Defendants and their defamation claim against Defendants Local 46, Robert A. Ledwith, and Terry Moore are dismissed with prejudice. The rest of Plaintiffs' claims are dismissed without prejudice to their amendment and re-filing by July 22, 2009. The Clerk of the Court is directed to close this matter.

Dated: New York, New York
       June 12, 2009

SO ORDERED

/s/ Paul A. Crotty
PAUL A. CROTTY
United States District Judge

---

[7] On a motion to dismiss, "[a] court may properly take notice of documents outside the four corners of the complaint" so long as the plaintiff had notice of those documents. Bio-Technology Gen. Corp. v. Genentech, Inc., 886 F. Supp. 377, 381 (S.D.N.Y. 1995) (citing Cortec Industries, Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991)); see also Twin City Bakery Workers and Welfare Fund v. Astra Aktiebolag, 207 F. Supp. 2d 221, 224 (S.D.N.Y. 2002). Plaintiffs undoubtedly had notice of Judge Braun's April 3, 2009 Opinion, as well as Continental's Amended Complaint in the state court matter.